ELIZA J. CLARK *v.* EQUITABLE LIFE ASSURANCE SOCIETY.

1. PAYMENT.   *Acceptance of lesser sum than debt in satisfaction.*

   The acceptance of a lesser sum than is due in satisfaction of an obligation does not satisfy the debt, where the acceptance is not consciously so made, and is unaccompanied by an agreement to that effect.

2. EQUITY.   *Jurisdiction.*

   A court of equity has jurisdiction of a suit to cancel an acquittance, and to enforce an accounting between the parties in case a discovery be necessary to obtain data from which to determine the sum due complainant.

3. SAME.   *Foreign corporation.*

   The fact that the defendant to such a suit is a foreign corporation, having its office, books, and assets out of the state, and that the court may find itself powerless to grant administrative relief, if defendant declines to make discovery, is not a cause for declining to entertain the cause.

FROM the chancery court, second district, of Coahoma county. HON. A. H. LONGINO, Chancellor.

The husband of Mrs. Clark, the appellant, complainant in the court below, nearly thirty years ago took out a policy of insurance in the Equitable Life Assurance Society, the appellee, for the sum of $10,000, and before his death he had paid the company nearly that sum.   By the application for insurance the husband requested that he be put in what is called the southern class of policy holders, and the policy issued recites that he was put in that class at his request, and the policy on its face discloses that he, as a policy holder, was to participate in profits.   The extent of this participation in profits to the holders of this class, is stated in the policy itself, to be determined in this way:   The participation was to be in the proportion that the rate of mortality of

the southern class bore to the rate of mortality of the others assured by the society, but not in the southern class.

When Mr. Clark died, Mrs. Clark applied for the fruits of the policy, and requested the company to notify her what the policy was then worth. She knew it was worth $10,000, as the policy on its face stipulated for payment of that sum, but, under the participation in profits clause, she expected a great deal more. She received a letter from the company stating there were no profits, and nothing in which to participate. She had further correspondence on the subject, but with no satisfactory results. At length she was led to believe that the representations of the company were true, and so she surrendered the policy and received $10,000 in full payment of the company's obligation.

Thereafter she filed her bill in this cause, seeking to have cancellation of the receipt in full given by her to the company on the surrender of the policy, on the ground that she was misled by false statements made to her by the company at the time of the surrender; statements untrue, as she avers in the bill, both in law and fact. She seeks, by this cancellation, to be put in position as if she had not surrendered the policy and receipted the company in full payment of the obligation. She prays an accounting with the company, by which she may see what they owe her. The bill avers that complainant does not know what the company owes her, but she avers that it owers her a considerable sum; that she has not the data with which to ascertain the true amount. Complainant seeks an accounting, averring that in determining she had no right to participation in profits, the company had proceeded along erroneous lines, it having based its calculations on the theory that she was entitled to participate only in profits made in the business of the southern class, whereas, according to the terms of the policy, she was entitled to participate in any profits made by the company generally, limited only by the proportion that the rate of mortality of the southern class bears to the rate of all others assured by the society.

The company answered, and denied any overreaching, misrepresentations or untrue statements, and affirmed that it did not proceed upon erroneous lines in arriving at the conclusion that the appellant was not entitled to participation in profits, alleging, as a matter of fact, that there were no profits to be apportioned under the policy. Much evidence was taken on the issues thus presented. Notwithstanding the fact that the defendant answered fully, and elaborate depositions were taken, and exceptions were filed to the depositions, the case was submitted, by consent of the parties, on the issues of law raised by a demurrer to the bill, which demurrer was incorporated in the answer. The court below sustained the demurrer, and dismissed the suit. Complainant appealed to the supreme court.

*J. W. Cutrer*, for appellant.

The contract of insurance provided that the appellant should be entitled to receive, on the maturing of the loss, upon her claim the sum of ten thousand dollars, augmented by participation in all profits accrued to the appellee during the term of the natural life of John Clark. The contract, as written, gives appellant a fixed and vested right to receive ten thousand dollars, and to participate in the profits of the company during the term the policy should be in force, as other policy holders were entitled to participate therein.

If it be that this right of participation in profits was limited by the policy being placed in the southern class, nevertheless, the right to participate in profits existed, and the policy holder being entitled to such dividends as should be found due, regard being had to the mortality experienced in the southern class, as compared to the mortality experienced among the rest of the insured, So that, at all events, the right to a proportion of profits existed, and the extent of such profits is to be fixed in a certain way, determinable, if need be, by resort to and adjudication by the courts. There is nowhere in the contract a stipulation that the appellee shall exercise the exclusive and final right to deter-

mine what part of its profits it shall apportion to policies read-
ing like the policy held by appellant, and on what basis such
apportionment shall be made.    If this was to be the contract, it
should plainly have been so expressed.    It did not so state
the contract.    On the contrary, the contract gave the right
to participate, and the manifest meaning of the words used
cannot be disregarded.  *Miss. Mut. Ins. Co.* v. *Ingram*, 34 Miss.,
215.

This policy does not read as do the tontine policies now gen-
erally in force, where the company is vested, in terms, with the
right equitably to apportion its profits among its policy holders;
but, even in this class, where the right is given the insurer to
make equitable apportionment of its dividends and profits, the
courts have jurisdiction to correct the action of insurance com-
panies about the making of such apportionment.    It may be
that where the apportionment is arrived at upon correct prin-
ciples, the action of the company would be *prima facie* correct,
but where it is alleged that the apportionment is not just and
equitable, as a matter of fact, and as, also, in this case, that
the apportionment was made entirely on mistaken principles,
and in disregard of the legal rights of appellant, in assuming a
false basis for making the apportionment, a court of equity will
interfere and see to it that the insurer does equity and renders
a correct account.    The allegations of the bill are, that the ap-
portionment was erroneously made, as a matter of fact, and
also, that the apportionment was based upon erroneous princi-
ples.    These allegations are all sufficient to invoke the aid of a
court of equity to see that the account is correctly stated.

The claim is not a claim for dividends *per se*, but it is the
claim of a creditor of a corporation, demanding that the debtor
surrender what it contracted to surrender—that is to say, that
it account for and pay to the creditor his certain proportion of
a fund made up, *inter alia*, of dividends, surplus, extra pre-
miums charged, lapses, and all the other multitudinous sources
of revenue, from which appellee has accumulated its vast reserve,

and make its enormous profits.   The amount due is a certain proportion of the profits owing to appellant, which it is the plain duty of appellee to pay.   In case of a failure to pay the correct amount due, or to state the amount due upon correct principles, a cause of action arises; and, therefore, the matters stated in the bill of complaint do show a cause of action cognizable by the courts.   *Uhlman* v. *New York Life Ins. Co.*, 109 N. Y., 421, 432; *Pierce* v. *Equitable Life Assurance Society*, 145 Mass., 56, s.c. 12 N. E. Rep., 858; 17 N. E. Rep., 363.

It is said by appellee that, conceding appellant's bill states a cause of action, the cause of action so stated is one which may be tried and determined at law; in other words, that a court of chancery has no jurisdiction to hear and determine the matters presented by the bill of complaint as grounds for relief, but that appellant should have sued at law.   The grounds for maintaining the jurisdiction of a court of equity, stated in this bill, are, that by reason of improper representations, a contract of assurance was placed for the benefit of appellant different from that which the parties had contracted for, and the contract as made, and not as written, should be enforced; that appellant is entitled to certain profits, which can be ascertained only by an accounting, which said profits appellee has heretofore attempted to state, but has stated upon erroneous principles; that by falsely representing that it had, proceeding upon correct principles, stated the profits to be due upon appellant's policy, and had found no profits to be due appellant thereon, appellee had secured the possession of and canceled the policy of appellant, which cancellation appellant seeks, by her bill, to have set aside; and that, finally, under the constitution of Mississippi, courts of chancery have jurisdiction of matters of account which are complicated; and even if not so, and if jurisdiction be not properly reposed in the chancery court, it was error for the chancellor to have dismissed the bill for such reasons, but on such a state of facts, the suit should have been transferred to the circuit court, to be there proceeded with as

provided by section 162 and the constitution of 1890.    So that, so far as the existence of grounds for a resort to the jurisdiction of a court of equity may be concerned, they seem ample, and, if not ample, the court should have ordered the cause transferred to the proper circuit court.    The cancellation will be adjudged to have been secured by appellee without consideration and upon a misrepresentation of essential facts.    *Tyler* v. *Odd Fellows' Mut. Relief Asso.*, 145 Mass., 134; *Hayes* v. *Mass. Mut. Life Ins. Co.*, 125 Ill., 626; *Harriman* v. *Harriman*, 12 Gray, 341; *Perkins* v. *Lockwood*, 100 Mass., 249; *Curran* v. *Rummell*, 118 Mass., 482; *Roseberg* v. *Doe*, 148 Mass., 560.

We come now to the point reserved by appellee, that this court cannot and will not administer the relief sought, for the reason that the defendant is a corporation of the state of New York, and the contract was a New York contract.    Surely, because of the difficulties attending the investigation it is not to be held by this court that relief will not be granted for the reason that it would be cumbersome to deal with the matters involved in this controversy; that inconvenience may result to appellee if this proceeding is maintained and an account ordered to be taken by the proper court of this state instead of by the proper court of the state of New York, is no reason for dismissing the suit.

This is an action by a resident within the jurisdiction of the court where instituted.    Process has been regularly served upon the defendant, the defendant has appeared and answered generally..    Under such state of facts the statute provides as follows: "When any writ of process against a corporation has been returned executed, the defendant shall be considered in court, and the action may proceed as actions against natural persons." Secs. 2323, 3433, code 1892.    Appellant sues for the enforcement of a contract with appellee, which she alleges appellee has not fairly and equitably complied with nor discharged, and we contend that the courts of this state have jurisdiction to hear and determine such causes when presented to them.    *Pierce* v.

*Equitable Life Assurance Society*, 145 Mass., 56; *Mo. Pac. Ry. Co.* v. *Cullers*, 81 Tex., 382; 13 L. R. A., p. 542.

*Mayes & Harris*, for appellee.

1. The bill presented no cause of action, legal or equitable. While the policy holder is entitled to "participate in profits," an action cannot be maintained against the company on the policy considered in that aspect. The demand presented is, in effect, a demand for a dividend, and the declaration or non-declaration of dividends is committed to the discretion of the officers of the company, and the courts will not undertake to supervise it. The right to "participation in profits" means a right to participate in such profits as the company shall declare, but not a right to force the company to declare profits, especially by legal process. *Coyne* v. *Weaver*, 84 N. Y., 386; *Knapp* v. *Warner*, 57 N. Y., 668; *White* v. *Hoyt*, 73 N. Y., 505; *Parshall* v. *Eggert*, 54 N. Y., 18; *Woodruff* v. *Woodruff*, 52 N. Y., 53; *Height* v. *Day*, 1 Johnson's Ch., 18; *Clarke* v. *Brooklyn Bank*, 1 Edw. Ch., 368; 1 Story's Eq. Jur., 475a; *Walker* v. *Devereaux*, 4 Paige, 253; *Leroy* v. *New York*, 4 Johnson's Ch., 356; *Conn. R. R. Co.* v. *Bailey*, 24 Vt., 465; *Fisher* v. *Ins. Co.*, 52 N. Y. Sup. Ct., 179, 183; *Canal Co.* v. *Coal Co.*, 50 N. Y., 250; *Scott* v. *Avery*, 5 H. of L. Cas., 811; *United States* v. *Robeson*, 9 Peters, 319; *Perkins* v. *Light Co.*, The Reporter, vol. 16, p. 680; *Milnes* v. *Gery*, 14 Vesey, 400; *Scott* v. *Liverpool*, 3 DeGex & Jones, 334; *Hood* v. *Hartshorn*, 100 Mass., 117; *Meeker* v. *Wright*, 76 N. Y., 272; *Davis* v. *The Mayor*, 14 N. Y., 506; *Chase* v. *Vanderbilt*, 37 Sup. Ct. (5 J. & S.), 334; *Webb* v. *Vanderbilt*, 39 Sup. Ct., 9; *Williams* v. *Telegraph Co.*, 93 N. Y., 192; *Karnes* v. *R. R. Co.*, 4 Abb., N. S., 107; *Verplank* v. *Ins. Co.*, 1 Edw., 84; *Luling* v. *Ins. Co.*, 45 Barb., 510; *Ely* v. *Sprague*, 1 Clarke, 351; *State* v. *Bank*, 3 La., 771; *Pratt* v. *Pratt*, 33 Conn., 446; *Scott* v. *Fire Co.*, 7 Paige, 198; *Goodwin* v. *Hardy*, 57 Me., 143; *Minot* v. *Paine*, 99 Mass., 101; *Granger* v. *Bassett*, 98 Mass., 462;

*Phelps* v. *Bank*, 26 Conn., 269; *Hyatt* v. *Allen*, 56 N. Y., 553; *James* v. *Railroad*, 57 N. Y., 196; *Brundage* v. *Brundage*, 1 N. Y. Sup. Ct. (T. & C.), 82; *Uhlman* v. *Ins. Co.*, 13 Daly, 47; *Uhlman* v. *Ins. Co.*, 109 N. Y., 421; 1 Cook on Stock & Stockholders, sec. 545, 546.

2. We contend that, even supposing the bill does allege a cause of action against the company, that cause of action is not of an equitable nature, but is at common law, and the chancery court has no jurisdiction. This is not a question of reversing the decision of the chancellor below, for want of jurisdiction, but of affirming such decision; wherefore, the constitutional provision does not apply. Neither the right to the discovery claimed in the bill, nor the allegation in respect to complicated accounts, is sufficient to give a court of equity jurisdiction. As to the right of discovery not being sufficient to confer jurisdiction, see *Foley* v. *Hill*, 2 H. of L. Cases, 28; *Graves* v. *Boston Co.*, 2 Cush., 419. That the complicated nature of the accounts is not sufficient to give equity jurisdiction, especially where the accounts are not mutual, see *Phillips* v. *Phillips*, 9 Hare, 471; *Fowle* v. *Lawrason*, 5 Peters, 495; *Railroad Co.* v. *Story*, 17 Conn., 361; *Hipp* v. *Babin*, 19 How., 271; *Ellis* v. *Davis*, 109 U. S., 493; *Salter* v. *Ham*, 31 N. Y., 321; *Railway Co.* v. *Martin*, 2 Phil., 758; *Bliss* v. *Smith*, 34 Beav., 508. This suit is a fishing one, and the courts of equity disfavor such proceedings. See *Everson* v. *Equitable*, 68 Fed. Rep., 258, to which the court's attention is especially invited. *Uhlman* v. *Ins. Co.*, 109 N. Y., 421; *Avery* v. *Equitable*, 117 N. Y., 451; *Hudson* v. *Ins. Co.*, 28 N. J. Eq., 167; *Ins. Co.* v. *Swank*, 102 Pa. St., 17.

3. We contend that, even if the bill showed a right to an accounting in equity, the fact that the defendant is a foreign corporation of the state of New York, with no place of business in this state except a mere canvassing agency, with all of its books in the state of New York, and beyond the reach of this court, with those books of such immense complexity and volume as

must necessarily exist in order to carry on the business described in the bill, with all its officers located in New York, and beyond the reach of this court, these facts are sufficient to prevent this court from undertaking to take the accounting prayed for. Our proposition is, not that this court has not the power to render a judgment, and to enforce that judgment, but that the court cannot ascertain the judgment to be rendered. The bill does not fix, even approximately, the amount of complainant's demand. It simply demands an investigation into the accounts of the company and its profits. It presents one of those instances in which the administrative jurisdiction of the court is appealed to, and where the court is so situated that its theoretical jurisdiction cannot be practically administered. See Adams' Equity, title Specific Performance; *Hudson* v. *Ins. Co.*, 28 N. J. Eq., 167; *Williston* v. *Railroad*, 13 Allen, 400; *Kansas Co.* v. *Railroad*, 135 Mass., 34; *Northstate Co.* v. *Field*, 64 Md., 151; *Smith* v. *Ins. Co.*, 14 Allen, 380; *Wheelock* v. *Lee*, 74 N. Y., 495; *Fisher* v. *Ins. Co.*, 52 N. Y. Sup. Ct., 179; *Howell* v. *Railroad Co.*, 51 Barb., 378; *Reiner* v. *Salisbury*, L. R., 2 Ch. Div., 378; *Mathei* v. *Galitzin*, L. R., 19 Eq., 340; *Coal Co.* v. *Hoffman Co.*, 30 Barb., 159; *Merrick* v. *Van Santvoord*, 34 N. Y., 222; *Eaton* v. *Aspinwall*, 19 N. Y., 119; *Buffalo, etc., Railroad* v. *Cary*, 26 N. Y., 75; *Railroad* v. *Railroad*, 16 Abb. Pr. (N. S.), 250.

Argued orally by *J. W. Cutrer*, for appellant, and by *Edward Mayes*, for appellee.

Woods, C. J., delivered the opinion of the court.

We have been unable to ascertain upon what ground or grounds the learned court below based its decree dismissing the bill of complaint filed by appellant, and we shall, therefore, briefly notice a few of those stated by counsel for appellee, as being sufficient to uphold that decree.

1. The fact that appellant received from appellee the sum of ten thousand dollars, called for by the policy, upon the life of

her late husband, and receipted and surrendered the policy, is thought by counsel for appellee to be a complete answer to her present claim, on the idea that one who accepts part of a debt in payment of the whole is bound thereby. But appellant avers that she receipted and surrendered the policy, relying solely upon the statements and representations of the appellee touching her rights under the policy, which she has since learned were untrue in fact and in law. She did not consciously, and by any agreement made by her, accept a smaller sum in payment of a larger one due her by her debtor, and this contention is without merit.

2. The decree of the court below may have gone upon the notion that a court of equity was without jurisdiction of the matters set out in the bill of complaint. This bill was for a cancellation of the surrender of the policy, if such cancellation should be thought necessary to an assertion of the claims propounded by appellant's bill. It was also a bill for an accounting—a settlement, under the direction of the court, of accounts running through more than twenty years. It was, moreover, a bill for discovery.

The accounting is sought because, as is averred, the appellee, in making and refusing to make apportionment of profits, under the terms of the policy upon the life of appellant's late husband, disregarded appellant's rights to participation in profits, in the several methods adopted by appellee in making apportionment of profits, and proceeded along erroneous lines in working out its conclusion that appellant was entitled to no participation in profits. The discovery is sought for the reason that while appellant knows that there were profits to be apportioned, she yet does not possess the necessary information and the exact data requisite to an ascertainment of the sum to which she is entitled under participation in profits, but that all necessary information is in the possession of appellee.

The appellant's contention, or one, and the chief one, is, that she was entitled to participation in the profits of the business of

appellee, in such proportion as the mortality experienced in the "southern class" bore to the mortality of others insured by appellee, but not in the "southern class;" whereas, the appellee, in declaring appellant not entitled to any participation in profits, had acted upon the mistaken assumption of apportioning to the policy on the life of appellant's husband such proportion only of its profits or earnings as had accrued from policies in the "southern class" alone.    The bill is not one, therefore, to compel the directors of the assurance society to declare a dividend in favor of appellant.    She is not a stockholder asking the court to control the discretion of directors of the assurance company, nor does she seek the aid of our courts to exercise any supervisory or visitorial power over the internal management of the business of a foreign corporation.    She is a creditor, pure and simple, seeking to enforce performance by the appellee of a written contract, and to that end she asks an accounting and discovery.    She says, in effect, "My written contract with the appellee stipulates for my participation in the profits of the business generally of appellee, in such proportion as the mortality experienced in the 'southern class' of its policy holders bears to the mortality of other policy holders not in the 'southern class.'    But the appellee has practically denied me any participation, upon the erroneous and inequitable assumption that I am to participate only in profits from 'southern class' business, and in that business appellee declares there are no profits. I ask the court to aid me in the assertion and maintenance of my contract rights, by compelling the insurance company to proceed now and adopt the equitable and proper basis of making the apportionment of profits to which I am entitled under my contract, and this can be done by a simple mathematical calculation.    I do not, however, possess the information to the making of this calculation, and I therefore pray a discovery from my debtor, and an accounting on a proper basis under the direction of the court."    She is clearly entitled to a relief in equity if not barred otherwise.

The fact that the appellee is a foreign corporation, domiciled in another state, and with its offices and books and assets in another state, no way effects the jurisdiction of our courts. The consideration of the facts just noted brings us up to the next question to be considered by us.

3. We do not understand that counsel for appellee assert that, on the case made by the bill of complaint filed by appellant, our courts of chancery are without jurisdiction, but, as we understand counsel, the proposition is that by reason of the facts adverted to a moment ago by us, viz., that the appellee is a foreign corporation, domiciled in New York, and that its offices and books of account and its assets are all beyond the boundaries of our own state, our courts will, in the exercise of judicial discretion, decline to entertain jurisdiction when it thus is made to appear that the court may, in the progress of the cause, find itself unable to grant administrative relief, if the appellee shall decline to make discovery, or otherwise refuse obedience to the orders or decrees of the court. It is suggested that it does not comport with judicial dignity to assume jurisdiction of a case where it is apparent that the court may be balked in its efforts to administer the law by a recalcitrant litigant. It would seem better to comport with judicial dignity for the court to proceed upon the supposition that obedience will be promptly yielded to its orders and decrees by every litigant before it, and to endeavor to find some legal method of enforcing obedience to its commands, if they shall be sought to be defied or evaded. It will be time enough for the court to abdicate its powers when it finds itself powerless to enforce its authority. Happily, in the case before us, the appellee has manifested a spirit of perfect obedience to the court's authority. It has fully answered the bill, and its chief officers have furnished a vast mass of evidence in voluminous depositions.

The action of the court in dismissing complainant's bill was erroneous, viewed in any of the aspects in which we have regarded it. The action of the learned court in overruling the

motion to suppress all the depositions of the company's chief officers was inopportune. Inasmuch as the chancellor had decided to dismiss, and did dismiss, complainant's bill, it was useless as well as untimely to overrule the motion to suppress appellee's depositions. We express no opinion as to the sufficiency or insufficiency of the grounds of the motion to suppress the depositions, and we reverse this action of the court, simply that the court below may now, in an orderly way, dispose of the motion after the case shall have been remanded.

*Reversed and Remanded.*